State of Indiana                    In The LaPorte Superior Court
County of LaPorte                   Civil Division Rm.

David Pannell,
          Plaintiff,
                                    46D02 1 7 1 0 P L 1 8 0 2

Vs.                                 Cause No. _____

Jane Magnus-Stinson,     **Jury Demand**
Kelly A. Miklos, and
Gregory F. Zoeller,
          Defendants.



F I L E D
IN CLERKS OFFICE

OCT 2 0 2017

LA PORTE SUPERIOR COURT

## Federal Bivens Action & 42 U.S.C. §§§ 1983, 1985(3), and 1986 Civil Rights Complaint

**Preliminary Statement**

This is a Federal Bivens Action & 42 U.S.C §§§ 1983, 1985(3), and 1986 Civil Rights Complaint filed by David Pannell, a state prisoner, for damages, declaratory judgment, alleging that (1) Defendant Jane Magnus-Stinson denied Plaintiff an opportunity under 28 U.S.C. § 2254 to file his first Habeas Corpus Petition in the district court challenging his State court conviction on constitutional grounds, in direct violation of Plaintiff's rights under Article One, Section 9, cl. 2 of the United States Constitution, Fourteenth Amendment to the United States Constitution, and 28 U.S.C. § 2254; (2) Defendant Kelly A. Miklos conspired with Defendant Jane Magnus-Stinson to "deny" Plaintiff an opportunity under 28 U.S.C. § 2254 to file his first Habeas Corpus Petition in the district court challenging his State court conviction on constitutional grounds, in direct violation of Plaintiff's rights under Article One, Section 9, cl. 2 of

1.

the United States Constitution, Fourteenth Amendment to the United States Constitution, and 28 U.S.C. § 2254; and (3) Defendant Gregory F. Zoeller conspired when he had knowledge, but did not do anything about Defendant Kelly Miklos' conspiracy with Defendant Jane Magnus-Stinson to denied Plaintiff an opportunity under 28 U.S.C. § 2254 to file his first Habeas Corpus Petition in the district court challenging his State court conviction on constitutional grounds, in direct violation of Plaintiff's rights under Article One, Section 9, cl. 2 of the United States Constitution, Fourteenth Amendment to the United States Constitution, and 28 U.S.C. § 2254; (2) Defendant Kelly A. Miklos conspired with Defendant Jane Magnus-Stinson to denied Plaintiff an opportunity under 28 U.S.C. § 2254 to file his first Habeas Corpus Petition in the district court challenging his State court conviction on constitutional grounds, in direct violation of Plaintiff's rights under Article One, Section 9, cl. 2 of the United States Constitution, Fourteenth Amendment to the United States Constitution, and 28 U.S.C. § 2254.

1. The Court has jurisdiction over the Plaintiff's claims of violation of federal constitutional rights under Federal Question Jurisdiction and 42 U.S.C. §§ 1331(a) and 1343.

**Parties**

2. The Plaintiff, David Pannell, is incarcerated at Indiana State Prison Facility ("ISP") during the events described in this complaint.

3. The Defendant Jane Magnus-Stinson is a federal judge at the United States District Court, Southern District of

Indiana, Indianapolis Division, and is responsible for, inter alia, the prompt adjudication of Habeas Corpus Petitions filed by pro se litigants in the district court under 28 U.S.C. § 2254. She is sued in her individual capacity.

4. The Defendant Kelly A. Miklos is a Deputy Attorney General of the State of Indiana, and is responsible for, inter alia, representing the Custodian ("Prison Warden") of pro se prison litigants who file Habeas Corpus Petitions in the in district court under 28 U.S.C. § 2254. She is sued in her individual capacity.

5. The Defendant Gregory F. Zoeller is the former Attorney General for the State of Indiana, and is responsible for, inter alia, supervising Deputy Attorney Generals who represent Custodian of pro se litigants who file Habeas Corpus Petitions in the district court under 28 U.S.C. § 2254. He is sued in his individual capacity.

6. At all the Defendants have acted, and continue to act, under color of Federal Law, and, or State Law at all times relevant to this complaint.

**Facts**

7. At all times relevant to the events in this complaint, in September, 2012, Plaintiff filed his (first) [mixed] and untimely Habeas Corpus Petition assigned Cause No. 1:12-CV-1301-TWP-DML in the United States District Court, Southern District of Indiana, Indianapolis Division, under 28 U.S.C. 2254, and challenged the constitutional firmness of his 1996 murder conviction in the State court. Plaintiff further requested that presid-

ing Judge, Hon. Tanya Walto Pratt, grant his request to excuse his late filing by allowing him to go through the "Gateway" under the "Actual Innocence/Miscarriage Justice Standard" in Sclup V. Delo, 513 U.S. 298 (1995).

8. At all times relevant to the events in this complaint, on July 22, 2013, under Cause No. 1:12-CV-1301-TWP-DWL, Judge Tanya Walton Pratt, United States District Court, S.D., Ind., entered an "Order" [**granting**] Plaintiff's request to excuse his late filed [mixed] first "Habeas Corpus Petition" and allowed Plaintiff to go through the "Gateway" and have his "constitution-al claims" heard in the district court under the "Actual Inno-cence/Miscarriage Of Justice Standard" in Shclup, supra, and then directed the Plaintiff's Custodian to answer the allegation in the Habeas Corpus Petition, and in doing so shall show cause why the relief sought by the Petitioner should not be granted. Judge Pratt further directed the Respondent to show cause within twenty-days after the date this entry is signed.

9. At all times relevant to events in this complaint, on August 30, 2013, the district court issued a "Notice Of Reassign-ment" of Case No. 1:12-CV-1301-TWP-DML to Judge Jane Magnus-Stinson. The "Notice" further indicated that Judge Tanya Walton Pratt is no longer assigned to the case.

10. On May 1, 2014, Defendant Magnus-Stinson entered an Order "dismissing without prejudice" Plaintiff's "2012 Habeas Corpus Petition" because Plaintiff failed to exhaust all State court remedies regarding the claims presented in the petition.

11. On May 16, 2014, Plaintiff timely filed his F.R.A.P.

4.

59 Motion To Alter/Amend Judgment and requested defendant Magnus-Stinson to allow him adequate time to file an "Amended Habeas Corpus Petition" to amend-out the "unexhausted" constitutional claims and proceed with only "exhausted" constitutional claims under the standard outline by the United Supreme Court in **"Rose V. Lundy, 455 U.S. 509 (1982)."**

12. At all times relevant to the events in this complaint, on March 3, 1982, the United States Supreme Court in "Rose V. Lundy, 455 U.S. 509, 102 S.Ct. 1198 (1982), opined in part that, "[t]he a district court must dismiss such 'mixed petitions,' leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court").

13. On May 22, 2014, defendant Magnus-Stinson entered an Order [**granting**] the Plaintiff's F.R.A.P. 59 Motion To Alter/Amend Judgment to file an "Amended Habeas Corpus Petition" which contains only "exhausted" constitutional claims under "Lundy, supra."

14. On June 19, 2014, the Plaintiff timely filed his "Amended Habeas Corpus Petition" which contained "exhausted" "constitutional claims": (1) "Ineffective Assistance of Trial Counsel Claims"; and (2) "Prosecutor Misconduct Claims." Plaintiff further asserted that both "claims" were "procedurally defaulted" under the Indiana State law "waiver rule," and therefore "technically exhausted" for the purpose of 28 U.S.C. § 2254(b)(1).

15. At all times relevant to the events in this complaint,

5.

on June 22, 2006, the United States Supreme Court in Woodford

Vs. NGO, 548 U.S. 81, 126 S.Ct. 2378 (2006), opined in part

that, "[W]ith respect to the federal habeas corpus statute's

general requirement that a state prisoner must exhaust state

remedies before filing a habeas corpus petition in federal court

(28 U.S.C.S. § 2254(b)), state-court remedies are described

as having been 'exhausted' when they are no longer available,

regardless of the reasons for their unavailability. Thus, if

state-court remedies are no longer available because the peti-

tioner failed to comply with the deadline for taking appeal,

then those remedies are technically exhausted,....."].

16. On June 23, 2014, defendant Magnus-Stinson conducted

a "preliminary review" of the "exhausted" "Ineffective Assistance

of Trial Counsel Claims" and "Prosecutor Misconduct Claims"

pursuant to Habeas Corpus Rule 4, and then [**granted**] Plaintiff's

"Amended Habeas Corpus Petition" and directed the Respondent

within twenty-days of the entry of this order to answer the

"Amended Habeas Corpus Petition" and show cause why the relief

sought by the Plaintiff should not be granted.

17. On July 17, 2014, defendant Miklos filed its (first)

"Motion For Extension Of Time" up to and including August 18,

2014, within which to file its "Return To Order To Show Cause"

why the relief sought by Plaintiff should by granted. In doing

so, defendant Miklos asserted in part: "[T]his deputy was unable

to obtain the necessary court records needed to respond to the

claims raised in the petition, As such, she was unable to file

a response by July 14, and now seeks an extension of time in

6.

which to file the Return to Order to Show Cause."

18. On July 17, 2014, defendant Magnus-Stinson [**granted**] defendant Miklos's (first) "Motion For Extension Of Time" up to and including August 14, 2014, within which to file its "Return To Order To Show Cause" why the relief sought by Plaintiff should not be granted. Moreover, however, defendant Miklos [**did not**] assert that the [procedurally defaulted] "Ineffective Assistance of Trial Counsel" and "Prosecutor Misconduct" claims raised in Plaintiff's "Amended Habeas Corpus Petition" were not "exhausted" in the State Court, and therefore the Court should "dismiss without prejudice" Plaintiff's "Amended Habeas Corpus Petition because Plaintiff failed to follow the Court's June 23, 2014, "Order" to file "only" "constitutional claims" that were raised on Direct Appeal in State court.

19. On August 18, 2014, defendant Miklos filed its (second) "Motion For Extension Of Time" up to and including September 17, 2014, within which to file its "Return To Order To Show Cause" why the relief sought by Plaintiff should by granted. In doing so, defendant Miklos asserted in part: "[U]ndersigned counsel seeks an extension of time due to her responsibilities in other cases. Primarily, undersigned counsel is currently preparing for an evidentiary hearing in a challenge to competency to executed in a capital case that will commence on September 2, 2014, in Overstreet V. State, Cause No. 41D02-1306-PC-000009 in the Johnson Superior Court (Supreme Court Cause No. 41S00-13-5-SD-00397). The trial court appointed to hear evidence in the Overstreet matter has ordered motions challenging evidence

7.

due to be filed today August 18, 2014 and briefs and memoranda
of law from the parties due tomorrow, August 19, 2014."). More-
over, however, defendant Miklos [**did not**] assert that the [pro-
cedurally defaulted] "Ineffective Assistance of Trial Counsel"
and "Prosecutor Misconduct" claims were not "exhausted" in the
State Court, and therefore the Court should "dismiss without
prejudice" Plaintiff's "Amended Habeas Corpus Petition" because
Plaintiff failed to follow the Court's June 23, 2014, "Order"
to file "only" "constitutional claims" that were raised on Direct
Appeal in State court.

  20. On September 1, 2014, defendant Magnus-Stinson [**granted**]
defendant Miklos's (second) "Motion For Extension Of Time" up
to and including September 17, 2014, within which to file its
"Return To Order To Show Cause" why the relief sought by
Plaintiff should not be granted.

**Conspiracy By Defendant Miklos To Violate Plaintiff's "Due
Process Rights" To "One Full Round Of Habeas Corpus Review"**

  21. On September 17, 2014, in the Respondent's "Third Motion
For Extension Of Time" up to November 17, 2014, within which
to file its "Return To Order To Show Cause," defendant Miklo's
[conspired] with defendant Magnus-Stinson [**not**] to follow the
Supreme Court precedent in "Lundy, supra," and violate the
Plaintiff's "due process rights" to "One Full Round Habeas Corpus
Review" of the "constitutional claims" presented in his first
2012 "Amended Habeas Corpus Petition" pursuant to 28 U.C.S.
§ 2254, by "wrongfully" and "erroneously" asserting that the
"procedurally defaulted" "Ineffective Assistance Of Trial Coun-

8.

sel" and "Prosecutor Misconduct" "constitutional claims" raised
in Petitioner's June 19, 2014, "Amended Habeas Corpus Petition"
were not "exhausted" as required by federal statute.

22. To further the conspiracy, defendant Miklos presented argu-
ments in the "Third Motion For Extension Time" which reads in
relevant pertinent part as follows:

"[O]n May 16, 2014, Petitioner filed a motion to
alter or amend judgment claiming that [he wanted to
go forward with his habeas proceeding only on the claims
that he exhausted during his direct appeal and forgo
review of unexhausted claims]. ("Motion" at page 3).
This Court granted Petitioner's motion, directed the
clerk to re-open the action, [and ordered Petitioner
to file an amended petition containing only claims which
have been exhausted in the Indiana state courts]. On
June 19, 2014, Petitioner filed an amended petition
for writ of habeas corpus. [Instead of presenting only
those claims that were exhausted on direct appeal as
addressed by the Indiana Court Supreme Court, Petitioner
presented as grounds for relief in this proceeding numer-
ous instances of alleged ineffective assistance of
counsel that were not exhausted in his direct appeal],
namely:

a. Trial counsel failed to conduct an adequate deposition
   of Davina Pannell and failed to object to an improper
   cross-examination by the prosecutor of Davina Pannell;
   (Id.).

b. Trial counsel failed to file a motion to suppress
   or object 'to the admission of evidence obtained
   incident to Petitioner's 'Illegal Warrantless Arrest,'
   which was based on insufficient probable cause;'
   (Id.).

c. Trial counsel failed to object to evidence obtained
   after his illegal arrest because it was based on

false statements provided by Davina Pannell; (Id.).

d. Trial counsel failed to properly investigate or inter-
view several eyewitnesses who live near the crime
scene that would provide exculpatory evidence; (Id.).

e. Trial counsel failed to properly investigate or inter-
view several witnesses who lived near the crime scene
that would provide exculpatory evidence; (Id.).

f. Trial counsel conceded guilt in the opening argument
and failed to subject the prosecutor's case to mean-
ingful adversarial contest;

g. Trial counsel failed to impeach witness Davina Pannell
with inconsistent statements made in a pre-trial
deposition; (Id. at page 5).

h. Trial counsel failed to impeach witness Janeshia
Pannell with inconsistent statements made in a pre-
trial deposition; (Id.).

i. Trial counsel failed to object when prosecutor failed
to lay a proper foundation before proffering evidence
of Petitioner's automobile accident; (Id.).

j. Trial counsel failed to object when Officer Wefler
testified regarding the cause or 'lack of cause'
for petitioner's automobile accident; (Id.).

k. Trial counsel failed to object to a 911 call on the
grounds that it contained inadmissible hearsay

l. Trial counsel failed to impeach Detective David
Phillips with inconsistent statements made in a pre-
trial deposition; (Id.).

m. Trial counsel failed to hire an expert witness to
establish that injuries suffered by the victim were
caused by two different weapons; and (Id).

n. Trial counsel failed to hire a private investigator
to investigate the time of Petitioner's automobile
accident following the murder. (Id.).

Petitioner also asserts numerous grounds of prosecutorial

misconduct that were not presented in his direct appeal,

10.

namely:

a. Prosecutor knowingly and intentionally solicited
   false testimony from Davina Pannell; (Id.).

b. Prosecutor breached duty to prevent false testimony
   by presenting testimony from Davina Pannell; (Id.).

c. Prosecutor knowingly and intentionally solicited
   false testimony from Janeshia Pannell; (Id. at page
   6).

d. Prosecutor knowingly and intentionally solicited
   false testimony from Detective David Phillips; (Id.).

e. Prosecutor and Police knowingly and intentionally
   withheld or destroyed Officer Frank's accident report;
   and (Id.).

f. Prosecutor breached its duty to prevent false
   testimony offered by Officer Frank Wefler. (Id.).

  [H]owever, in order to more fully and more compre-
hensively respond to Petitioner's claims, including
claims of actual innocence, Respondent must have the
direct appeal record and file it with this Court. Id.
at page 7). The direct appeal record has been made a
part of the record of Petitioner's post-conviction appeal
and may not be checked out by Respondent's counsel until
the appeal has been completed. (Id.).

  Thus, the parties stand in the same position as
they did when the Court initially dismissed Petitioner's
petition for failing to exhaust state court remedies."
(Id.).

23. On October 2, 2014, defendant Magnus-Stinson [granted]
defendant Miklos's "Third Motion For Extension of Time" up to
and including November 17, 2017.

24. On November 17, 2014, defendant Miklos filed the Respon-
dent's "Fourth Motion For Extension Of Time" up to January 2,
2015, within which to file its "Return To Order To Show Cause,"

and, again, as in Respondent's "Third Motion For Extension of
Time," defendant Miklos [conspired] with defendant Magnus- Stinson
[**not**] to follow the Supreme Court precedent in "Lundy, supra,"
and violate the Plaintiff's "due process rights" to "One Full
Round Habeas Corpus Review" of the "constitutional claims" pre-
sented in his first 2012 "Amended Habeas Corpus Petition" pursuant
to 28 U.C.S. § 2254, by "wrongfully" and "erroneously" asserting
that the "procedurally defaulted" "Ineffective Assistance Of Trial
Counsel" and "Prosecutor Misconduct" "constitutional claims" raised
in Petitioner's June 19, 2014, "Amended Habeas Corpus Petition"
were not "exhausted" as required by federal statute.

25. To further the conspiracy, defendant Miklos presented
the (same) arguments from the "Third Motion For Extension of Time,"
in the "Fourth Motion For Extension Time" which reads in relevant
pertinent part as follows:

"[O]n May 16, 2014, Petitioner filed a motion to
alter or amend judgment claiming that [he wanted to
go forward with his habeas proceeding only on the claims
that he exhausted during his direct appeal and forgo
review of unexhausted claims]. ("Motion" at page 3).
This Court granted Petitioner's motion, directed the
clerk to re-open the action, [and ordered Petitioner
to file an amended petition containing only claims which
have been exhausted in the Indiana state courts]. On
June 19, 2014, Petitioner filed an amended petition
for writ of habeas corpus. [Instead of presenting only
those claims that were exhausted on direct appeal as
addressed by the Indiana Court Supreme Court, Petitioner
presented as grounds for relief in this proceeding numer-
ous instances of alleged ineffective assistance of
counsel that were not exhausted in his direct appeal],

namely:

a. Trial counsel failed to conduct an adequate deposition of Davina Pannell and failed to object to an improper cross-examination by the prosecutor of Davina Pannell; (Id.).

b. Trial counsel failed to file a motion to suppress or object 'to the admission of evidence obtained incident to Petitioner's 'Illegal Warrantless Arrest,' which was based on insufficient probable cause;' (Id.).

c. Trial counsel failed to object to evidence obtained after his illegal arrest because it was based on false statements provided by Davina Pannell; (Id.).

d. Trial counsel failed to properly investigate or interview several eyewitnesses who live near the crime scene that would provide exculpatory evidence; (Id.).

e. Trial counsel failed to properly investigate or interview several witnesses who lived near the crime scene that would provide exculpatory evidence; (Id.).

f. Trial counsel conceded guilt in the opening argument and failed to subject the prosecutor's case to meaningful adversarial contest;

g. Trial counsel failed to impeach witness Davina Pannell with inconsistent statements made in a pre-trial deposition; (Id. at page 5).

h. Trial counsel failed to impeach witness Janeshia Pannell with inconsistent statements made in a pre-trial deposition; (Id.).

i. Trial counsel failed to object when prosecutor failed to lay a proper foundation before proffering evidence of Petitioner's automobile accident; (Id.).

j. Trial counsel failed to object when Officer Wefler testified regarding the cause or 'lack of cause' for petitioner's automobile accident; (Id.).

k. Trial counsel failed to object to a 911 call on the grounds that it contained inadmissible hearsay

l. Trial counsel failed to impeach Detective David
Phillips with inconsistent statements made in a pre-
trial deposition; (Id.).

m. Trial counsel failed to hire an expert witness to
establish that injuries suffered by the victim were
caused by two different weapons; and (Id).

n. Trial counsel failed to hire a private investigator
to investigate the time of Petitioner's automobile
accident following the murder. (Id.).

Petitioner also asserts numerous grounds of prosecutorial
misconduct that were not presented in his direct appeal,
namely:

a. Prosecutor knowingly and intentionally solicited
false testimony from Davina Pannell; (Id.).

b. Prosecutor breached duty to prevent false testimony
by presenting testimony from Davina Pannell; (Id.).

c. Prosecutor knowingly and intentionally solicited
false testimony from Janeshia Pannell; (Id. at page
6).

d. Prosecutor knowingly and intentionally solicited
false testimony from Detective David Phillips; (Id.).

e. Prosecutor and Police knowingly and intentionally
withheld or destroyed Officer Frank's accident report;
and (Id.).

f. Prosecutor breached its duty to prevent false
testimony offered by Officer Frank Wefler. (Id.).

[H]owever, in order to more fully and more compre-
hensively respond to Petitioner's claims, including
claims of actual innocence, Respondent must have the
direct appeal record and file it with this Court. Id.
at page 7). The direct appeal record has been made a
part of the record of Petitioner's post-conviction appeal
and may not be checked out by Respondent's counsel until
the appeal has been completed. (Id.).

Thus, the parties stand in the same position as
they did when the Court initially dismissed Petitioner's

14.

petition for failing to exhaust state court remedies."
(Id.).

26. On December 3, 2014, defendant Magnus-Stinson [granted]
defendant's Miklos "Fourth Motion For Extension of Time" up to
and including January 2, 2015, within which to file its "Return
To Order To Show Cause."

25. On January 5, 2014, in the Respondent's "Fifth Motion For
Extension Of Time" up to March 3, 2015, within which to file its
"Return To Order To Show Cause," defendant Miklos, again, as in
the "Third and Fourth Motion For Extension Of Time, [conspired]
with defendant Magnus-Stinson [not] to follow the Supreme Court
precedent in "Lundy, supra," and violate the Plaintiff's "due
process rights" to "One Full Round Habeas Corpus Review" of the
"constitutional claims" presented in his first 2012 "Amended Habeas
Corpus Petition" pursuant to 28 U.C.S. § 2254, by "wrongfully"
and "erroneously" asserting that the "procedurally defaulted"
"Ineffective Assistance Of Trial Counsel" and "Prosecutor
Misconduct" "constitutional claims" raised in Petitioner's June
19, 2014, "Amended Habeas Corpus Petition" were not "exhausted"
as required by federal statute.

27. To further the conspiracy, defendant Miklos presented
similar arguments from the "Third and Fourth Motion For Extension
of Time," in the "Fifth Motion For Extension of Time" which reads
in relevant part as follows:

"[T]his Court dismissed Petitioner's petition because
his post-conviction proceeding in the state court was
not complete. ("Fifth Motion For Extension of Time" at
page 2).

This Court granted Petitioner's motion, directed the
clerk to re-open the action, and ordered Petitioner to

15.

file an amended petition containing only claims which
have been exhausted in the Indiana state courts. (Id.).

On June 19, 2014, Petitioner filed an amended petition
for writ of habeas corpus. (Id. at 2, 3). Instead of pre-
senting only those claims that were exhausted on direct
appeal as addressed by the Indiana Supreme Court, Petition-
er presented as grounds for relief in this proceeding
numerous instances of alleged ineffective assistance of
counsel that were not exhausted. (Id. at 3).

Respondent has sought four extensions of time to file
a Response to Pannell's amended petition and is seeking
a fifth extension of time. (Id. a 3).

Undersigned counsel seeks an additional extension
of time due to the unavailability of the direct appeal
and post-conviction record. Id.). **It is Respondent's fur-
ther contention, now that Petitioner has filed an amended
petition, that he is still presenting numerous claims
that are procedurally defaulted in direct contravention
of this Court's Order instructing Petitioner to file an
amended petition to proceed on claims that have been fully
exhausted in the states courts**. (Id. at 3, 4). (Emphasis
and underline added).

However, in order to more fully and bore comprehensive-
ly respond to Petitioner's claims, including his claims
of actual innocence, Respondent must have the direct appeal
record and file it with this Court. (Id. at 4). Respondent
cannot obtain the direct appeal record because Petitioner's
appeal from the denial of post-conviction is still pending
in the state court. (Id.). As of today's date, the matter
has been presented to the Indiana Court of Appeals for
a determination since August 5, 2014. (Id.). The direct
appeal has been made a part of the record of Petitioner's
post-conviction appeal and may not be checked out by
Respondent's counsel until the appeal has been completed.
(Id.).

Moreover, Petitioner has attempted to litigate and

16.

present additional evidence in support of his claims of
ineffective assistance of appellate counsel that bear
on the factual assertions that he is making in his amended
petition to show his actual innocence. (Id.). Thus, it
is necessary for the Respondent and this Court to review
the proceedings and evidence presented in the post-convic-
tion proceedings before further addressing Petitioner's
claim of actual innocence. (Id.).

Thus, the parties stand in the same position as they
did when this Court initially dismissed Petitioner's peti-
tion for failing to exhaust his state remedies. (Id.).

Therefore, Respondent is requesting additional time
on order to obtain the direct appeal record once Petition-
er's post-conviction appeal is final to more fully respond
to Petitioner's claims in his amended petition." (Id.
at 5).

**Conspiracy By Defendant Magnus-Stinson To Violate Plaintiff's
Due Process Rights To "One Full Round Of Habeas Corpus Review"**

A. Unjustified Ruling That "Claims" Presented In The "Amended
   Habeas Corpus Petition Is "Unexhausted"

28. On January 21, 2015, the defendant Magnus-Stinson [granted]
in part defendant's "Fifth Motion For Extension of Time" up to
and including February 18, 2015, within which to file its "Return
to Order To Show Cause" to answer Plaintiff's "Amended Petition,"
and then "erroneously" ruled that Plaintiff's "Ineffective Assis-
tance of Trial Counsel" and "Prosecutorial Misconduct" [constitu-
tional claims], which were "exhausted" for the purpose of 28 U.S.C.
§ 2254(b)(1)(A) because the "claims" were "procedurally defaulted"
under Indiana State Law, were now "unexhausted" for the purpose
of 28 U.S.C. § 2254(b)(1)(A).

29. In the January 21, 2015, "Order," Defendant Magnus-Stinson

supported the "erroneous" ruling that the "claims" presented in

in the Plaintiff's "Amended Petition" is "unexhausted" when [she]

explained in relevant pertinent part:

> "[T]his action was initially briefed and dismissed
> without prejudice on May 1, 2014 based on the conclusion
> that the petitioner had not exhausted available state
> court remedies. (Id. at page 3). The petitioner sought
> relief from that disposition and explicitly chose to
> proceed only on exhausted claims. (Id.). Accepting that
> representation, on May 23, 2014 the Court vacated its
> dismissal and permitted the petitioner to proceed on the
> basis of an amended habeas corpus petition which asserted,
> or which was supposed to have asserted, only claims which
> has been exhausted in the state courts. (Id.).

> The petitioner's direct appeal was decided in a
> published opinion. (Citation omitted). Although his post-
> conviction filing appear to have been convoluted, the
> trial court's records are available for analysis. Id.
> at page 4). [**Claims not presented to completion in the
> direct appeal and the postconviction proceedings are by
> definition not 'exhausted' as that term is used in the
> federal habeas corpus statute**. (Id.). As petitioner's
> state post-conviction proceeding is not yet concluded,
> only those claims raise on direct appeal are exhausted."
> (Id.).

30. At all times relevant to the events in this complaint, the
record of this cause of action is devoid of any "Final Judgment"
entered by the district court which **"dismissed with or without
prejudice"** Plaintiff's "2012 Amended Habeas Corpus Petition" because
it contained "constitutional claims" that were not [exhausted]
under state court remedies as required pursuant to 28 U.S.C. §
2254(b)(1)(A).

B. Unjustified "Recharacterization" Of Plaintiff's (First) "2012
   Amended Habeas Corpus Petition" As Plaintiff's "1997 **Brief Of
   Appellant**" Without First Providing Plaintiff "**Notification**"

31. In the January 21, 2015, "Order," defendant Magnus-Stinson

further the [conspiracy] to violate Plaintiff's right to "One Full

Round Habeas Corpus Review" of the "constitutional claims" presented

in Plaintiff's "2012 Amended Habeas Corpus Petition," by [unjustifi-

ably] "Recharacterizing" Plaintiff's "2012 Amended Habeas Corpus

Petition" as Plaintiff's "1997 Brief Of Appellant," without first

giving Plaintiff "Notification" of its intent to recharacterize,

warned Plaintiff that this recharacterization means that any subse-

quent 2254 motion will be subjected to the restrictions on "second

or successive" motions, and provided Plaintiff an opportunity to

withdraw his "2012 Amended Habeas Corpus Petition" or to amend

it so that it contains all the 2254 claims Plaintiff believes he

has.

32. To further the conspiracy, defendant Magnus-Stinson supported

the [unjustifiable] "Recharacterizing" of Plaintiff's "2012 Amended

Habeas Corpus Petition" as Plaintiff's "1997 Brief Of Appellant,"

by explaining in relevant pertinent part:

  "[T]he parties continue to sper over procedural aspects
  of the petitioner's litigation in the Indiana state courts.
  (Id.). This sparring is likely the result of the expanded
  nature of the claims petitioner has attempted to raise
  in his amended habeas corpus petition, and has resulted
  in extensive delay. (Id.). This sparring should not be
  occurring. (Id.). The sparring is at an end. (Id.). <u>To
  explicit, only those claims exhausted on direct appeal
  are now the subject of this action. (Id.). Regardless of
  how petitioner has characterized them in his amended peti-</u>

tion, respondent need only address those claims raised
in petitioner's direct appeal. (Id.). Petitioner's appel-
lant's brief is available at docket entry 73.2. Petitioner
has affirmatively chosen to forego any other claims. (Id.).

The pending fifth motion for enlargement of time is
granted to the extent that the respondent shall have through
February 18, 2015 in which to show cause why the relief
sought by the petitioner in his amended petition for writ
of habeas corpus should not be granted. (Id.). The petition-
er's opposition to the fourth motion for enlargement of
time are overruled. (Id.).

No reconsideration of the foregoing rulings will be
made." (Id.). (Emphasis and Underline added).

33. At all times relevant to the events in this complaint, the
United States Supreme Court in "Castro V. United States, 540 U.S.
375 (2004)," held that, "[T]his court recognized that with respect
to federal court's longstanding practice of sometimes recharacter-
izing a motion, which a pro se litigant had mislabeled different-
ly, as the litigant's first motion for federal postconviction relief
under 28 USCS 2255, a Federal District Court's recharacterizing
powers were limited, in that the court had to (1) notify the liti-
gant that the court intended to recharacterize the pleading, (2)
warn the litigant that this recharacterization means that any subse-
quent 2255 motion would be subjected to 2255's restrictions on
'second or successive' motions, and (3) provide the litigant an
opportunity to withdraw the motion or to amend it so that it con-
tains all the 2255 claims that the litigant believed he had. If
the District court failed to do these things, then the motion could
not be considered to have become a 2255 motion for the purposes
of applying to later motions the 'second or sucessive' restric-

tions." [Castro, supra, at 375].

**Conspiracy By Defendant Miklos To Violate Plaintiff's Due Process Rights To "One Full Round Of Habeas Corpus Review" By Filing A "Return To Order To Show Cause" To "Answer" The Claims Presented In Plaintiff's "1997 Brief Of Appellant," Which Was An "Unauthorized "Second Or Successive" Petition Under 28 U.S.C. § 2244(a)(3)(A)**

34. On February 18, 2015, defendant Miklos further the [conspiracy] to violate Plaintiff's "Due Process Rights To On e Full Round Of Habeas Corpus review" on the "constitutional claims" presented Plaintiff's "2012 Amended Habeas Corpus Petition," by filing a "Return To Order To Show Cause" to "answer" the "claims" raised in Plaintiff's "1997 Brief Of Appellant," which defendant new or should have known was an "unauthorized" "second or successive" petition pursuant to 28 U.S.C. § 2244(a)(3)(A).

35. To further the conspiracy, defendant Miklos presented several arguments in the "Return To Order To Show Cause" why the district court should deny the "claims" raised in Plaintiff's "1997 Brief Of Appellant," when [she] explained in relevant pertinent part:

> "[O]n September 13, 2012, Pannell filed his original
> petition for writ of habeas corpus in this Court. (Id.
> at page 4). Following a stay, several amendments to the
> petition, and an Order allowing Pannell to proceed only
> on exhausted claims, on January 21, 2015, this Court issued
> an Order further directing Respondent to address 'those
> claims raised in petitioner's direct appeal' and contained
> in Petitioner's appellant's brief on direct appeal filed
> in this Court at docket entry 73.2. (Id.). Those claims
> are as follows: 1) the trial court improperly excluded
> evidence regarding the victim's drug use; and 2) trial
> counsel was ineffective for failing to admit an ambulance
> run report and by failing to present evidence regarding

Defendant's drug use.

### III.

**Petitioner's claim that the trial court improperly excluded evidence regarding the victim's drug use is not cognizable for federal haebas relief.**

Petitioner's claim does not assert nor does it present by its nature a violation of federal constitutional law. (Id. at page 8). (Citations omitted).

Pannell failed to assert any purported violation of federal law in the trial court's exclusion of testimony regarding the victim's drug use. (Id.). To that end, Pannell's claim is merely one of state law's regarding the admissibility of evidence and thus is not cognizable in federal habeas review. (Id.).

### IV

**Petitioner's claims of ineffective assistance of counsel are without merit.**

Pannell claims that his trial counsel was ineffective for failing to admit an ambulance run report and for failing to present evidence of his drug use at the time of the crime. (Id. at page 11). (Citation omitted).

**B. The appellate court reasonably found that trial court counsel was not ineffective.**

The Indiana Supreme Court recited the correct law in reviewing Pannell's claim and found that the ambulance run report and the times listed on the report had no discernible relation to the issues at trial and that trial court could not be ineffective for failing to present evidence that his client killed the victim but did so while under the influence of drugs while his client maintained the he did not kill her. (Id. at page 13). Because Respondent is not able to check out the state court trial record and file same with this Court, Respondent is not able to more fully address Pannell's claim's on the merits. (Id.). To the extent this Court is inclined to find that Pannell's petition is timely and the he has demonstrated trial counsel

ineffectiveness, Respondent respectfully requests additional time in order to obtain the record following the adjudication of Pannell's claims on post-conviction relief to more fully respond to the claim." (Id.).

**Conspiracy By Defendant Magnus-Stinson To Violate Plaintiff's Due Process Rights To "One Full Round Of Habeas Corpus Review" By "Issuing A "Final Judgment" On The Merits Of The "Claims" Raised In Plaintiff's "1997 Brief Of Appellant," Which Was An "Unauthorized "Second Or Successive" Petition Under 28 U.S.C. § 2244(a)(3)(A)**

36. On March 19, 2015, defendant Magnus-Stinson further the [conspiracy] to violate Plaintiff's right to "One Full Round Of Habeas Corpus Review" on the "constitutional claims" presented in Plaintiff's "2012 Amended Habeas Corpus Petition," by entering a "Final Judgment" on the merits of the "claims" raised in Plaintiff's "1997 Brief Of Appellant," which was an "Unauthorized" "second or successive" petition under 28 U.S.C. § 2244(b)(3)(A), upon which defendant Magnus-Stinson lacked jurisdiction to "entertain" without prior approval from the Seventh Circuit Court Of Appeals.

37. To further conspiracy, defendant Magnus-Stinson provided detailed reasoning to support the "Final Judgment" "dismissing with prejudice" the "claims" raised in Plaintiff's "1997 Brief Of Appellant," which defendant Magnus-Stinson denominated as Plaintiff's "2012 Amended Habeas Corpus Petition," when she explained in relevant pertinent part:

"[P]annell claimed in his direct appeal that (1) the trial court improperly excluded evidence of the victim's drug use and (2) trial counsel was ineffective for failing to admit an ambulance run report and present evidence that Pannell was under the influence of drugs at the time of the offense. (Id. at page 4). These claims are renewed

**in this habeas action**. (Id.). (Emphasis and Underline add-
ed). The court is also required to address the respondent's
argument that Pannell's habeas corpus was not timely filed.
(Id.).

Notwithstanding the procedural deficiency of the **amended
habeas petition**, the Court will briefly examine the merits
of Pannell's **habeas claims**. (Id. page 6). The court there-
fore proceeds to the merits, at least insofar as AEDPA
permits. What that means in this case is that in order
to prevail Pannell must show that the state court in his
**direct appeal** unreasonably applied a federal doctrine
declared by the United States Supreme Court. (Citation
omitted). (Emphasis and Underline added).

A federal court may grant habeas relief only if the
petitioner demonstrates that he is in custody 'in violation
of the Constitution of laws...of the United States.' (Id.
at page 7). (Citation omitted). (Id.). 'To say that a
petitioner's claim is not cognizable on habeas review is
thus another way of saying that his claim 'presents no
federal issue at all.' (Id.). (Citation omitted). If treated
simply as a challenge to the trial court's evidentiary
ruling Pannell's first claim is simply nor cognizable under
2254(a). (Id.).

Pannell's **first habeas corpus claim** can also be
understood as a due process challenge to the exclusion
of evidence. (Id). Pannell's claim that the exclusion of
evidence of his wife's drug use 'rendered the trial funda-
mentally unfair' does not implicate a due process because
the evidence would not have played a crucial, critical,
and highly significant role in the trial. (Id. at page
8).

Pannell's **second claim** is that he was denied effective
assistance of counsel at trial for failing to admit and
ambulance run report and for failing to present evidence
of his drug use at the time of the crime. (Id. at page
9). The Indiana Supreme Court recognized the two-prong

Strickland standard in Pannell, 686 N.E. 2d at 826. The
Indiana Supreme Court observed that 'the time of Pannell's
arrival bears no discernible relation to the issues at
trial.' (Id.). By reference, this was finding that there
was no discernible reason for the lawyer to have sought
admission of the ambulance report. (Id.). Accordingly,
this decision is entitled to AEDPA deference under § 2254
(d)(1), and Pannell is not entitled to habeas corpus relief
on his claim of effective assistance of counsel. (Id. at
page 10).

Apart from the procedural barriers, the claims Pannell
presents do not warrant habeas corpus relief in light of
the differential standard required the AEDPA. (Id.)
(Citations omitted). Pannell's **amended habeas corpus
petition** fails to satisfy this difficult standard and that
petition is therefore **denied**. (I. at page 12).

38. At all times relevant to events in this complaint, in 2007,
the United States Supreme Court in "Burton V. Stewart, 549 U.S.
147 (2007)," held that "[(1)] the prisoner, in filing the 2002
petition, had failed to comply with the gatekeeping requirements
of the Antiterrorism and Effective Death Penalty Act of 1996 in
28 U.S.C.S. § 2244(b), with respect to second or successive applica-
tions; and (2) this failure had deprived the Federal District Court
below of jurisdiction to hear his claims. Accordingly, the Supreme
Court vacated the Court of Appeals' judgment and remanded the case
with instructions to direct the District Court to dismiss the 2002
petition for lack of jurisdiction."

39. Defendant Gregory Zoeller in his official capacity as
"Indiana Attorney General," who has supervisory authority over
defendant Miklos in her official capacity as Deputy Attorney
General, [conspired] to violate Plaintiff's right to "One Full

Round Of Habeas Corpus Review" of the "constitutional claims"
presented in Plaintiff's "2012 Amended Habeas Corpus Petition,"
where he was fully aware of defendant Miklos' [conspiracy] to vio-
late Plaintiff's right to "One Full Round Of Habeas Corpus Review"
of the "constitutional claims" presented in Plaintiff's "2012 Amend-
ed Habeas Corpus Petition," and did nothing to prevent it.

40. On June 4, 2015, Plaintiff filed his "Notice Of Appeal"
to challenge defendant Magnus-Stinson's March 19, 2015, "Final
Judgment," and May 5, 2015, "Post-Judgment Order" in the Seventh
Circuit Court of Appeals. In so doing, Plaintiff did not know that
defendant Magnus-Stinson had violated his "constitutional and stat-
utory" right to "One Full Round Of Habeas Corpus Review" to be
heard on the "constitutional claims" presented in his "2012 Habeas
Corpus Petition" where: (1) defendant Magnus-Stinson had "unjustifi-
ably" "Recharacterized" Plaintiff's "2012 Amended Habeas Corpus
Petition" as his "1997 Brief Of Appellant, without first giving
him proper "notification" as required by the principles in "Castro,
supra"; and (2) defendant Magnus-Stinson "lacked jurisdiction"
to hear the "claims" presented in Plaintiff's "1997 Brief Of
Appellant" because it is a "second or successive" petition.
Therefore, neither "claim" was raised in Plaintiff's request for
a "COA" in the Seventh Circuit.

41. On November 9, 2015, Plaintiff "timely" filed a F.R.C.P.
60(b)(4) Motion For Relief From Void Judgment" in the district
court. Here, again, Plaintiff did not know that defendant Magnus-
Stinson had violated his "constitutional and statutory" right to
"One Full Round Of Habeas Corpus Review" on the "constitutional

claims" presented in his "2012 Habeas Corpus Petition" where: (1)
defendant Magnus-Stinson had "unjustifiably" "Recharacterized"
Plaintiff's "2012 Amended Habeas Corpus Petition" as his "1997
Brief Of Appellant, without first giving him proper "notification"
as required by the principles in "Castro, supra"; and (2) defendant
Magnus-Stinson "lacked jurisdiction" to hear the "claims" presented
in Plaintiff's "1997 Brief Of Appellant" because it is a "second
or successive" petition. Thereafter, neither "claim" was raised
in Plaintiff's request for a "COA" in the Seventh Circuit from
the defendant Magnus-Stinson's "denial" of his Rule 60(b) Motion.

42. At all times relevant to the events in this complaint, on
September 28, 2015, Plaintiff filed another "Habeas Corpus Petition"
in the United States District Court, Southern District Of Indiana,
Indianapolis Division, under Cause No. 1:15-cv-05124-WTL-DML, and
argued that he is entitled to file another "Habeas Corpus Petition"
under the principles of "Rose V. Lundy, 455 U.S. 509 (1982)," but
however, Plaintiff did not know that defendant Magnus-Stinson had
violated his "constitutional and statutory" right to "One Full
Round Of Habeas Corpus Review" of the "constitutional claims" pre-
sented in his "2012 Habeas Corpus Petition" where: (1) defendant
Magnus- Stinson had "unjustifiably" "Recharacterized" Plaintiff's
"2012 Amended Habeas Corpus Petition" as his "1997 Brief Of Appel-
lant, without first giving him proper "notification" as required
by the principles in "Castro, supra"; and (2) defendant Magnus-
Stinson "lacked jurisdiction" to hear the "claims" presented in
Plaintiff's "1997 Brief Of Appellant" because it is a "second or
successive" petition. Thereafter, neither "claim" was raised in

27.

Plaintiff's "Notice Of Appeal" from the district court's October
20, 2015, "Final Judgment" denying Plaintiff's September, 2015,
"Habeas Corpus Petition.

43. At all times relevant to the events in this complaint, on
March 3, 2016, after developing the facts that his "September,
2015 Habeas Corpus Petition" is not a "second or successive" peti-
tion due in part because defendant Magnus-Stinson "Recharacterized"
Plaintiff's "2012 Habeas Corpus Petition," without first giving
Plaintiff proper "Notification" as required under the principles
in "Castro, supra," Plaintiff then filed his F.R.C.P. 60(b)(4)
"Motion For Relief From Void Judgment" in the U.S. District Court,
S.D., Indianapolis Division, under Cause No. 1:15-CV-01524-WTL-DML,
and argued in relevant pertinent part:

> "[T]he District Court acted 'inconsistently with due
> process of law' by dismissing Pannell's '[Castro Petition]'
> for lack of jurisdiction because it is a 'second or succes-
> sive' petition pursuant to 28 U.S.C. Sec. 2244(b), and
> Pannell has not yet obtained approval to file the petition
> from the Seventh Circuit Court of Appeals."

**The District Court Would Have Granted The Petition**

44. At all times relevant to the events in this complaint, the
"constitutional claims" presented in Plaintiff's "2012 Amended
Habeas Corpus Petition" is "meritorious" and the "Habeas Corpus
Petition would have been granted by the district court upon review
under 28 U.S.C. § 2254. That is, inter alia, Plaintiff's "Actual
Innocence Claim" is based on Prosecutor and Police "misconduct"
which resulted in the violation of Pannell's constitutional rights.
In this case, Pannell argued in his "2012 Amended Habeas Corpus

Petition" that the Prosecutor committed "fundamental misconduct"
as follows: (1) Presented "false evidence" and solicited false
testimony during trial from Davina Pannell and Janeshia Pannell
which indicated that they both were on the telephone at or after
23:25:00 hrs., talking to the 911 Operator in their mother's bed-
room, and then they looked out the bedroom window and witnessed
Pannell get up from stabbing their mother, stick the knife in the
ground and ran to his car and drive off. The Prosecutor knew that
Davina's and Janeshia's trial testimony was false for five reasons:
First, The Prosecutor was fully aware of the "Probable Cause Affi-
davit" in support of Pannell's "Warrantless Arrest," whereby Davina
Pannell was quoted as saying: "[H]e resumed stabbing her mother.
Davina then ran to a neighbors house and called for the occupants
to call police. She then ran back home to call police from her
house. **She stated her father was gone when she ran back to her**
**house. Davina state her mother was lying on the ground unresponsive.**
**Davina ran inside and called police.**" ("Probable Cause Affidavit"
at page 2). (Emphasis and Underline Added). Second, The Prosecutor
was well aware of the contents of Davina Pannell's "Voluntary
Statement," whereby the following colloquy occurred:

"[Q]. Ok. And so then—he argued then, because she wouldn't
give him the five dollars? (Id. at page 5).
A. Yes. (Id.).
Q. Ok, and what happened then HON'? (Id.).
A. Then, he started arguing again. He pushed her out the
door, and got a knife. And start...stabbing her, and
stabbing her. And I ran outside to, push him out the
way. And he hit me with the knife, and I was struggling
to get him off of her, and then he kept stabbing her.

**And then, I ran in the house and called police. I**
**came outside, and he was already gone**." (Id. 5, 6).
(Emphasis

         *     *     *     *

Q. Who all saw the fight, though, who was there and around
when the fight was taking place? (Id. at page 9).

A. Well, I had got in there, when there was fighting,
when they had...when they was like-I was coming through
the way. My sisters and brothers were still in the
room. (Id.).

Q. They were still in their room? (Id.).

A. Yeah, in my mother's room. They was watching TV and
stuff. I came out and he was hitting her and stuff,
and then he they fe-he fell on the ground, both of
'em did. He started stabbing her and stuff. (Id.).

Q. **So your brothers and sisters weren't out there when**
**that happened**? (Id.). (Emphasis and Underline Added).

A. **No. They heard a little of arguing, but they did not**
**come out the room**. (Id. at 9, 10). (Emphasis and
Underline added).

Third, the Prosecutor was well aware of contents of Davina
Pannell's May 4, 1995, "Deposition," whereby the following relevant
and pertinent colloquy occurred:

Q. **What did he do with the knife, Davina? After he stabbed**
**your mom, what did he do with the knife**? (Id. at page
28).

A. **Well, he came back out across the street and I was**
**holding my mother, and I had saw the knife stuck in**
**the ground**." (Id.). (Emphasis and Underline Added).

Fourth, the Prosecutor was fully aware of (i) an "Incident Report"
prepared by Officer Anthony Kelly ("Officer Kelly"), the primary
responding Officer, who reported that when he arrived at 1050
S. Villa Ave. at 23:26:58, Davina Pannell told him that the
"incident" occurred at 23:10:00 hrs., about 15 minutes before

he arrived at the location; and (ii) Officer Anthony Kelly trial
testimony whereby he testified that, "[h]e prepared an "Incident
Report" indicating that when he arrived at 1050 S. Villa Ave.
Davina Pannell told him that the "stabbing incident" involving
her mother occurred at 23:10:00 hrs." Fifth, the Prosecutor was
aware of the fact that the "height" and "dense" of the "shrub
bushes" growing in the yard in front of the window of Leshia
Pannell's "bedroom," effectively blocked and impeded the children's
ability to view what they testified they witnessed while looking
out their mother's front bedroom window. Furthermore, Pannell's
trial counsel argued during "Closing Argument" the "visual impedi-
ment created by the "bushes" growing in the front yard in front
of the bedroom window, when he explained in relevant part:

> "[M]r. Murphy: This is a picture of the front of the
> house. (Closing Argument Transcript at page 23). Never,
> never until yesterday did Janeshia say, oh, I was inside
> and the phone allowed me to look out this window and see.
> (Id.). Now, you look at this once you take this back into
> the jury room and you look at what possible line of sight
> there is from any vantage point in this window, through
> these bushes, to what is on the front steps. (Id.). **It
> cannot be done. It could not have been done last February
> 17th**." (Id.). (Emphasis and Underline Added).

Moreover, in Pannell's "Post-Conviction" Appeal in Pannell V. State,
36 N.E.3d 477, Note 6 (2015), the Indiana Court Appeals reviewed
the facts of the case and found that the "incident" occurred at
11:10 p.m.. In so doing, the Court opined:

> "[P]annell argues that the time difference between
> the stabbing and his accident was only fourteen minutes,
> but if we take Officer Wefler's expected testimony as true,

**the difference between 11:10 p.m. and 11:39 p.m. is twenty**
**nine minutes**." (Id.). (Emphasis and Underline Added).
The district court's review of this "claim" would have resulted
in granting the Petition; (2) Prosecutor and Police knowingly and
intentionally "withheld" or "destroyed" Officer Frank Wefler's
"Officer Automobile Accident Report" regarding Pannell's "single-
car" accident, and violated Pannell's "constitutional right" to
"exculpatory" and "impeaching" evidence. The Prosecutor knew that
it violated Pannell's right to "exculpatory" and "impeaching" evi-
dence for reasons as follows: (a) Exculpatory Evidence: In this
case, first, the Prosecutor knew that, inter alia, the "nature"
and "extent" of the "defensive wound" to Mrs. Pannells' right hand,
which nearly "cut off" the "index finger" on that hand, resulted
in "massive" and "extreme" "blood loss" from that "injury" which
would have caused extensive "blood-splatter" [contamination] of
the "clothing," "hands," and "body" of the person(s) who committed
the stabbing of Mrs. Pannell on the night of February 17, 1995.
Second, if the Prosecutor would have provided Pannell with a copy
Officer Frank Wefler's "Officer's Automobile Accident Report" re-
garding Pannell's "single-car automobile accident" which occurred
at 5600 University Ave. on the night of February 17, 1995, Pannell
would have discovered that: (i) that his "automobile accident"
was reported to the 911 Operator at or before 11:39 p.m. on the
night of February 17, 1995, less than (14) fourteen  minutes after
the State alleged that Pannell had stabbed his wife at or after
11:25 p.m., and then left the crime scene; (ii) at 23:40:46 hrs.
an IPD Officer was dispatched to investigate Pannell's "single-

32.

car" automobile accident; (iii) that the "automobile accident"
occurred approximately four miles from the crime scene, and the
travel time from the "crime scene" to Pannell's residence, and
then to the "automobile accident" scene was (13) minutes; (iv)
the reporting Officer found the "clothing" that Pannell's was
wearing did not match an "eyewitness's" description of the clothing
worn by the perpetrator of the stabbing; and (v) the reporting
Officer found no "blood-stains" on the clothing worn by Pannell,
his hands or body, or in his car. Third, based on the foregoing
information, Pannell would have filed a "Motion To Hire Expert
'Blood Splatter' Pathologist" who would have testified that due
to the "nature" and "extent" of the defensive wound to Mrs.
Pannell's right hand that nearly severed the right "index finger"
from her hand, that it would have been "impossible" for Pannell
to have "stabbed" his wife and not have any "DNA" or "Bloodstains"
on his "hands," "body" or the "clothing" he was wearing at the
time of the alleged stabbing which matched his wife's "DNA" or
"Blood-type." Fourth, Pannell would have filed a "Motion To Hire
A Private Investigator/Travel Specialist" who would have testified
that: (i) he went to Pannell's residence at the Arlington Motel
at 5855 E. Washington St., Apt. 234, Indpls, IN, and viewed the
"Video Camera" footage during the afternoon on Friday, February
17, 1995, and found that the "clothing" worn by Pannell at the
time he exited the "Hotel" and entered his vehicle and drove away,
matched the same [clothing] Pannell was wearing at the time he
was involved in a "single-car" "automobile accident" at 5600
University Ave. at or before 11:39 p.m. on Friday 17, 1995; and

(ii)(a) he conducted a review of "Video Camera" footage Pannell's
residence at the "Arlington Hotel" at 5855 E. Washington St. during
the evening hours between 11:00 and 12:00 midnight on Friday,
February 17, 1995, discovered that Pannell had not gone to his
residence during that time period; and (b) he conducted an re-enact-
ment of the "travel route" from the "crime scene" at 1050 S. Villa
Ave. to Pannell's residence at 5855 E. Washington St., and then
to the "automobile accident" location at 5600 University Ave.,
and found that it would take 13 minutes to complete the travel
course, and therefore notwithstanding that the "Video Camera"
footage shows that Pannell did not return to his residence during
the hours of 11:00 p.m. and 12:00 midnight, Pannell could not have
returned to his residence and changed his "clothes" and cleaned
any "bloodstains" off his hands and body within (1) one minute.
Thus, if the above-mentioned "evidence" had been presented on
Pannell's behalf during the trial, no reasonable jury would have
found Pannell guilty beyond a reasonable doubt. (B) Impeaching
Evidence: In this case, first, prior to trial, the Prosecutor knew
that: (i) during trial it planned to present to the jury Pannell's
"single car" automobile accident as a "suicide attempt" to show
Pannell's "guilt," by calling Officer Frank Wefler to testify that
he examined the "accident site" and was unable to find a reason
for the accident; and (ii) during trial it planned to explain by
inference why the State did not admit "DNA" or "Bloodstains" evi-
dence connecting Pannell to the stabbing death of his wife, by
calling Officer Frank Wefler to testify that he received the "Radio
Dispatch" at approximately 1:00 a.m. on the morning of February

18, 1995, more than an hour and ahalf after Pannell allegedly stab-
bed his wife at 11:25:00 hrs., and thus Pannell had more than ade-
quate time to remove any and all "incriminating" "DNA" or "Blood
stains" evidence from his "clothing," "hands" and "body," and even
the interior of his car, before causing his own "single-car" auto-
mobile accident." Second, if the State had provided Pannell a copy
of Officer Frank Wefler's "Officer's Automobile Accident Report,"
Pannell would have been able during "cross-examination" to: (i)
impeach Officer Frank Wefler's testimony that he examined the "acci-
dent site" and found no reason why the "accident" occurred, by
establishing that: (i) Pannell's "automobile accident" was not
investigated by the "Homicide Branch Section" of the Indianapolis
Police Department as required by Police Policy No. 9.03, Sec. III.
(A)(4).("[P]ersonal injury or fatal accidents involving a motor
vehicle with corroborating evidence that it was an intentional
act shall be investigated by the Homicide Branch."); (ii) Officer
Frank Wefler's finding was not corroborated by any evidence that
Pannell's "automobile accident" was an intentional act; and (iii)
that the 911 Operator dispatched an Officer at 23:40:46 hrs., to
investigate Pannell's "single-car" "automobile accident." Thus,
if the above-mentioned "evidence" had been presented on Pannell's
behalf during the trial, the jury would not have found Pannell
guilty beyond a reasonable doubt. The district court's review of
Pannell's [second] "claim" would have resulted in granting the
Petition; and (3) The Prosecutor knowingly and intentionally solici-
ted "false" testimony from Officer Frank Wefler during trial, when
Officer Frank Wefler testified that he received a "Radio Dispatch"

35.

at 1:00 a.m. to go to 5600 University Ave. to investigate Pannell's
"single-car" automobile accident. In this case, first, the Prosecu-
tor planned to persuade the jury that Pannell had adequate time
to remove any all "DNA" and "Bloodstains" from his "clothing,"
"hands," "body," and interior of his car, by soliciting "false"
testimony from Officer Frank Wefler that he received the "Radio
Dispatch" at 1:00 a.m. on the morning of February 18, 1995, more
than one hour and a half after Pannell allegedly stabbed his wife
at 11:25:00 hrs.. Second, the Prosecutor knew that Officer Wefler's
trail testimony that he "received the 'Radio Dispatch' at 1:00
a.m. to go to Pannell's "single-car" automobile accident was "false"
for the reasons as follows: (i) the Prosecutor had possession/access
to the Police "Incident Report" which indicated that: (a) the "acci-
dent" was reported at 11:39; and (b) "Primary Unit 337" was "Dis-
patched" at  11:40:46 hrs.; and (ii) the Prosecutor had possession/
access to Officer Frank Wefler's "Officer's Automobile Accident
Report" which indicated that Officer Frank Wefler had been "Dis-
patched" at 23:40:46 hrs. by the 911 Operator to go to Pannell's
"single-car" automobile accident" scene. Thus, if the above-mention-
ed "evidence" had been presented on Pannell's behalf during the
trial, no reasonable jury would have found Pannell "guilty" beyond
a reasonable doubt. The district court's review of Pannell's third
"claim" would have resulted in granting the Petition.

**Conspiracy By Defendant Gregory Zoeller To Violate Plaintiff's
Due Process Rights To "One Full Round Of Habeas Corpus Review"**

45. On and before February 18, 2015, defendant Zoeller knew
or should have known that defendant Miklos was "conspiring" with

36.

defendant Magnus-Stinson to violate Plaintiff's "Due Process Rights" to "One Full Round Of Habeas Corpus Review" of the "constitutional claims" presented his "2012 Amended Habeas Corpus Petition," but did nothing to prevent the "conspiring" from occurring. More specifically, defendant Zoeller failed to prevent defendant Miklos from filing a "Return To Order To Show Cause" to "conspire" with defendant Magnus-Stinson to adjudicate the "claims" in Pannell's "1997 Brief Of Appellant," which is a "second or successive" 'petition" under 28 U.S.C. § 2244(b), upon which defendant Magnus-Stinson "lacked jurisdiction" to hear without approval from the Seventh Circuit Court of Appeals.

**Defendant Magnus-Stinson Is Not Protected By "Absolute Immunity" Because Defendant Magnus-Stinson Lacked Jurisdiction To Adjudicate The Claims In Pannell's "1997 Brief Of Appellant," Which Is A "Second Or Successive" Petition.**

46. At all times relevant to the events in this complaint, defendant Magnus-Stinson "lacked jurisdiction" to hear the "claims" presented in Pannell's "1997 Brief Of Appellant" because it a "Second" or "Successive" petition. Here, defendant Magnus-Stinson initially had "jurisdiction" over Pannell's "2012 Amended Habeas Corpus Petition" under the "Lundy Rule" and 28 U.S.C. § 2254. But however, because defendant Magnus-Stinson during the habeas corpus proceedings did not enter an a "Final Judgment" "dismissing with or without prejudice" Pannell's "2012 Amended Habeas Corpus, and thereby relinquishes "jurisdiction" of Pannell's "2012 Amended Habeas Corpus Petition," and therefore, defendant Magnus-Stinson acted without jurisdiction when she "adjudicated" the claims in

Pannell's "1997 Brief Of Appellant," which was a "second" or "suc-
cessive" petition.

**Claims For Relief:**

47. The actions of Defendant Jane Magnus-Stinson in failing
to "adjudicate" the "constitutional claims" presented in Plaintiff's
"2012 Amended Habeas Corpus Petition" under the "Lundy Rule" and
28 U.S.C. § 2254, violated Plaintiff's "constitutional rights"
to "One Full Round Of Habeas Corpus" proceedings to challenge his
State court conviction on constitutional grounds.

48. The actions of Defendant Jane Magnus-Stinson in [conspiring]
with defendant Miklos in failing to "adjudicate" the "constitutional
claims" presented in Plaintiff's "2012 Amended Habeas Corpus Peti-
tion" under the "Lundy Rule" and 28 U.S.C. § 2254, violated Plain-
tiff's "constitutional rights" to "One Full Round Of Habeas Corpus"
proceedings to challenge his State court conviction on constitution-
al grounds.

49. The actions of Defendant Jane Magnus-Stinson in "adjudicat-
ing" the "claims" In Pannell's "1997 Brief Of Appellant," which
is a "second" or "successive" petition, violated Plaintiff's "con-
stitutional rights" to "One Full Round Of Habeas Corpus" proceeding
to challenge his State court conviction on constitutional grounds.

50. The actions of Defendant Jane Magnus-Stinson in [conspiring]
with defendant Miklos in "adjudicating" the "claims" In Pannell's
"1997 Brief Of Appellant," which is a "second" or "successive"
petition, violated Plaintiff's "constitutional rights" to "One
Full Round Of Habeas Corpus" proceeding to challenge his State
court conviction on constitutional grounds.

51. The actions of Defendant Kelly Miklos in [conspiring] with defendant Jane Magnus-Stinson in failing to "adjudicate" the "constitutional claims" presented in Plaintiff's "2012 Amended Habeas Corpus Petition" under the "Lundy Rule" and 28 U.S.C. § 2254, violated Plaintiff's "constitutional rights" to "One Full Round Of Habeas Corpus" proceedings to challenge his State court conviction on constitutional grounds.

52. The actions of Defendant Kelly Miklos in [conspiring] with defendant Jane Magnus-Stinson in "adjudicating" the "claims" In Pannell's "1997 Brief Of Appellant," which is a "second" or "successive" petition, violated Plaintiff's "constitutional rights" to "One Full Round Of Habeas Corpus" proceeding to challenge his State court conviction on constitutional grounds.

53. The actions of Defendant Gregory Zoeller in [conspiring] with defendant Magnus-Stinson in failing to "adjudicate" the "constitutional claims" presented in Plaintiff's "2012 Amended Habeas Corpus Petition" under the "Lundy Rule" and 28 U.S.C. § 2254, violated Plaintiff's "constitutional rights" to "One Full Round Of Habeas Corpus" proceedings to challenge his State court conviction on constitutional grounds.

54. The actions of Defendant Gregory Zoeller in [conspiring] with defendant Jane Magnus-Stinson in "adjudicating" the "claims" In Pannell's "1997 Brief Of Appellant," which is a "second" or "successive" petition, violated Plaintiff's "constitutional rights" to "One Full Round Of Habeas Corpus" proceeding to challenge his State court conviction on constitutional grounds.

Wherefore, Plaintiff requests that the Court grant the following

relief:

A. Issue a declaratory judgment stating that:

1. The failure of Defendant Magnus-Stinson to "adjudicate" the "constitutional claims" in Plaintiff's "2012 Amended Habeas Corpus Petition' under the "Lundy Rule" and 28 U.S.C. § 2254, violated Plaintiff's "Due Process Rights" under the Fourteenth Amendment to the United States Constitution and Article One Section 9, cl. 2 of the United States Constitution.

2. The "adjudication" of Pannell's "1997 Brief Of Appellant" by Defendant Jane Magnus-Stinson, which is a "second" or "successive" petition, violated Plaintiff's "Due Process Rights" under the Fourteenth Amendment to the United States Constitution and Article One Section 9, cl. 2 of the United States Constitution.

3. The decision made by Defendant Magnus-Stinson to [conspire] with Defendant Kelly Miklos in failing to "adjudicate" the "constitutional claims" in Plaintiff's "2012 Amended Habeas Corpus Pettion" under the "Lundy Rule" and 28 U.S.C. § 2254, violated Plaintiff's "Due Process Rights" under the Fourteenth Amendment to the United States Constitution and Article One Section 9, cl. 2 of the United States Constitution.

4. The decision made by Defendant Magnus-Stinson to [conspire] with Defendant Kelly Miklos to "adjudicate" the "claims" In Pannell's "1997 Brief Of Appellant," which is a "second" or "successive" petition, violated Plaintiff's "constitutional rights" to "One Full Round Of Habeas Corpus" proceeding to challenge his State court conviction on constitutional grounds.

5. The decision made by Defendant Kelly Miklos to [conspire]

with defendant Jane Magnus-Stinson in failing to "adjudicate" the "constitutional claims" in Plaintiff's "2012 Amended Habeas Corpus Petition' under the "Lundy Rule" and 28 U.S.C. § 2254, violated Plaintiff's "Due Process Rights" under the Fourteenth Amendment to the United States Constitution and Article One Section 9, cl. 2 of the United States Constitution.

6.  The decision made by Defendant Kelly Miklos to [conspire] with defendant Jane Magnus-Stinson in "adjudicating" the "claims" In Pannell's "1997 Brief Of Appellant," which is a "second" or "successive" petition, violated Plaintiff's "Due Process Rights" under the Fourteenth Amendment to the United States Constitution and Article One Section 9, cl. 2 of the United States Constitution.

7. The decision made by Defendant Gregory Zoeller to [conspire] with defendant Jane Magnus-Stinson in failing to "adjudicate" the "constitutional claims" in Plaintiff's "2012 Amended Habeas Corpus Petition' under the "Lundy Rule" and 28 U.S.C. § 2254, violated Plaintiff's "Due Process Rights" under the Fourteenth Amendment to the United States Constitution and Article One Section 9, cl.

8. The decision made by Defendant Gregory Zoeller to [conspire] with defendant Jane Magnus-Stinson in "adjudicating" the "claims" In Pannell's "1997 Brief Of Appellant," which is a "second" or "successive" petition, violated Plaintiff's "Due Process Rights" under the Fourteenth Amendment to the United States Constitution and Article One Section 9, cl. 2 of the United States Constitution.

B. Award compensatory damages in the following amounts:

1.$22,000,000.00 against Defendant Jane Magnus-Stinson for: (1) violating Plaintiff's "due process rights" to "One Full Round

41.

Of Habeas Corpus" proceedings on the "merits" of the "constitutional
claims" presented in his "2012 Amended Habeas Corpus Petition";
(2) violating Plaintiff's "due process rights" to "One Full Round
Of Habeas Corpus" proceeding to challenge Plaintiff's State court
conviction on "constitutional grounds," by "adjudicating" the
"claims" In Pannell's "1997 Brief Of Appellant," which is a "second"
or "successive" petition"; (3) [conspiring] with Defendant Kelly
Miklos to violate Plaintiff's "due process rights" to "One Full
Round Of Habeas Corpus" proceedings on the "merits" of the "consti-
tutional claims" presented in his "2012 Amended Habeas Corpus Peti-
tion"; and (4) [conspiring] with Defendant Kelly Miklos to violate
Plaintiff's "due process rights" to "One Full Round Of Habeas Cor-
pus" proceeding to challenge Plaintiff's State court conviction
on "constitutional grounds," by "adjudicating" the "claims" In
Pannell's "1997 Brief Of Appellant," which is a "second" or "succes-
sive" petition."

    2. $10,000,000.00 against Defendant Kelly Miklos for: (1)
[conspiring] with Defendant Jane-Magnus-Stinson to violate
Plaintiff's "due process rights" to "One Full Round Of Habeas
Corpus" proceedings on the "merits" of the "constitutional claims"
presented in his "2012 Amended Habeas Corpus Petition"; and (2)
[conspiring] with Defendant Jane-Magnus-Stinson to violate Plain-
tiff's "due process rights" to "One Full Round Of Habeas Corpus"
proceedings to challenge Plaintiff's State court conviction on
"constitutional grounds," by "adjudicating" the "claims" In
Pannell's "1997 Brief Of Appellant," which is a "second" or
"successive" petition."

3. $5,000,000.00 against Defendant Gregory Zoeller for failing to prevent Defendant Kelly Miklos from [conspiring] with Defendant Jane-Magnus-Stinson to violate Plaintiff's "due process rights" to "One Full Round Of Habeas Corpus" proceedings on the "merits" of the "constitutional claims" presented in his "2012 Amended Habeas Corpus Petition"; and (2) failing to prevent Defendant Kelly Miklos from [conspiring] with Defendant Jane Magnus- Stinson to violate Plaintiff's "due process rights" to "One Full Round Of Habeas Corpus" proceedings to challenge Plaintiff's State court conviction on "constitutional grounds," by "adjudicating" the "claims" In Pannell's "1997 Brief Of Appellant," which is a "second" or "successive" petition."

C. Award punitive damages in the following amounts:

1. $20,000,000.00 against Defendant Jane-Magnus-Stinson.

2. $10,000.000.00 against Defendant Kelly Miklos.

3. $5,000,000.00 against Defendant Gregory Zoeller.

F. Grant such other relief as it may appear that Plaintiff is entitled.

October 12, 2017.

Plaintiff/Pro se

Counsel of Record

David Pannell/963265

ISP

One Park Row St.

Michigan City, IN 46360